Brinkerhoff, J.
The plaintiffs filed their petition in the common pleas of Hamilton county, to obtain a construction of the will of Thomas Williams, deceased, the father of the plaintiff Euretta, claiming that under the provisions of the will, properly construed, and by reason of the death of one of her brothers without issue, the said Euretta is entitled to an estate for her life in one-seventh part of the real estate of the testator, and if she shall die without having had a child or children, then to a fee-simple estate in such seventh part. The heirs and devisees of the testator, and the surviving trustee named in the will and his heirs, are made parties defendant.
Issue having been taken by answer to the petition, the ease was submitted to the court on an agreed statement of facts ; and a decree having passed in the common pleas, the case was appealed to the district court, where it was reversed for decision in this court.
The facts apparent from the pleadings and the agreed statement are these:
The plaintiff, Euretta Gilpin, wife of William H. Gilpin, formerly Euretta Williams, is the daughter of Thomas Williams, *de•ceased, the testator, the construction of whose will is the subject of this controversy.
The defendants are Francis B. Williams, a son; the legal representative of William Williams, deceased, another son; the legal representative of Mary Ashburn, deceased, a daughter; Rebecca Rusk, another daughter, her husband and children; Susan Elston, .another daughter, and her children; Catharine M. Cook, another daughter, her husband and children, who are devisees under the will; and the heirs and legal representatives of Isaac G. Burnet, ^deceased, the surviving executor and trustee named in the will.
*374 Thomas Williams, the testator, made and published his last will on March 6,1831, which was duly proved at the' February term (April 15), 1833, of the court of common pleas for Hamilton county.
The material portion of his will, the construction of which is involved in this suit, is as follows:
“4. To my friend, Isaac G-. Burnet, and my son William Williams, and to the survivors of them, I will and bequeath all the real estate of which I may die possessed, in trust for the uses and purposes herein specified: 1. That for the term of fifteen years, from the first day of June, eighteen hundred and thirty-one, the said Isaac G-. Burnet and William Williams, or the survivor of them, shall receive all the rents and profits of said real estate, and after payment of the proper rates of insurance and the assessed taxes and necessary repairs, the remainder shall be distributed as received, one-third to my wife Mary, and the other two-thirds to my eight children in equal proportion, as heirs at law; and if, by any casualty, the house on Main street should be consumed by fire, I authorize and empower the said Isaac G-. Burnet and William Williams, or the survivor of them, to cause a house to be again erected on the ground, and to mortgage the lot and the rents of the building after it is erected, to< raise funds for that purpose. • 2. After the expiration of the said term of fifteen years, the said Isaac G-. Burnet and William Williams, or the survivor of them, shall, surrender up the control of all my real estate, and release the title hereby vested in them, as herein directed, to wit: To my son * William Williams, his heirs and assigns forever, one undivided eighth part j to my son Thomas Williams, his heirs and assigns forever, one undivided eighth part; to my son Francis Burdett Williams, his heirs and assigns, forever, one undivided eighth part; to my daughter Mary Ashburn, during her natural life, and to her children after her death forever, an undivided eighth part; to my daughter Rebecca Rusk, during her natural life, and to her children after her death forever, one undivided eighth part; to my daughter Susan Elston, during her natural life, and to her children after her death forever, one undivided eighth part; to my daughter Catharine Mason Williams, during her natural life, and to her children after her death forever, one undivided eighth part; and to my daughter Euretta Williams, during her natural life, and to her children after her death forever, one undivided eighth part; and if my wife Mary be *375 in life at the expiration of the aforesaid term of fifteen years, the-bequest and division, as herein above provided for, are to take effect subject to her right of dower, in the same manner as if this will had never been made; and if any one of the before-named deviseesshould decease before the expiration of the said fifteen years without children, the distribution of such deceased devisees then shall be made to the surviving devisees.”
Thomas Williams, one of the sons and devisees, died, without-children, before the decease of the testator, in the year 1831.
William Williams, one of the trustees and devisees, died, leaving children, prior to the expiration of the said term of fifteen years.
Isaac G-. Burnet, surviving trustee, about June 18, 1846, the said term of fifteen years having expired, executed a deed to the plaintiff, Euretta Gilpin, she being then married, in which, reciting the provisions of the will, he surrendered, remised, and released to her during her natural life, and to her children after her death, and their heirs and assigns forever, an undivided seventh part of the real estate accrued to him by virtue of said will, to have and to hold to *the said Euretta during her natural life, and to her children after her death, their-heirs and assigns forever.
At the time of the execution of the will, two of the testator’s daughters, Catharine Mason Williams, afterward Cook, and Euretta Williams, the plaintiff, were unmarried. Both have since married. Mrs. Cook has children, who are made defendants. Mrs. Gilpin has never had any. Francis B. Williams was the youngest child of the testator, and on or about the 15th of June, 1831, was six years of age.
The real property which the testator possessed when he made his will consisted of a tract of land in Colerain township, about five miles from Cincinnati, of 166 12-100 acres; another tract on Walnut Hills, Mill creek township, near Cincinnati, of 135 acres 2 roods; an out-lot in the city of Cincinnati, No. 40, lying between Twelfth and Thirteenth streets and Race and Yine streets, which was subdivided in the partition; a lot on Walnut and Columbia streets, 91 feet 10 inches on Walnut, and a lot on Main and Columbia streets, about 76 feet on Main and 150 feet on Columbia. Of the land in Colerain township, a part was cleared for cultivation and a part woodland. There was wood on the tract on Walnut Hills, but its chief value was on account of its proximity to the city, and its capability of being used for country or suburban residences and truck *376 or vegetable gardens. There were no buildings of much value on either tract. The out-lot was unimproved. There were moderate improvements on the other city lots, yielding a rental.
After the expiration of the term of fifteen years, prescribed in the will, and the execution of the deed by Burnet, as surviving trustee, a partition was had among the devisees, by judicial proceeding instituted to that effect, by which one-seventh of the testator’s real •estate was allotted to Euretta Williams.
The plaintiffs, in their petition, charge and claim that the circumstances under which said will was made, and the character of the real estate, all which is set out above, in connection with the provisions in said will, show that the testator intended to dispose of all his property, and to die intestate as to ño part thereof or any interest therein; that in the ^direction to convey to each of his •daughters and secure a provision for her children, he intended that each daughter should have her equal share of his estate, subject ■only to the reservation out of it for her children, and contemplated that this intention should bo effectuated by a proper deed of settlement to be made by the trustees. The plaintiffs, therefore, insist that they are entitled to require from the heirs of the surviving trustee, or from a trustee to be appointed by the court, a |>roper conveyance of the interest of the said Euretta in the estate of her father, by convoying the same to the said Euretta for life, with contingent remainder in fee to her children, and in the event she should have no children, to Euretta in fee.
The claim'of the plaintiffs is based upon two propositions:
1. That the trust declared by the will, in respect to the property Revised to the trustees, is an executory trust, which, for the purpose -of effecting the intentions of the testator, requires from the trustees .a conveyance of the property, to the beneficiaries, in other terms than those used in the will itself.
2. That the terms to be supplied must be such as will secure to Euretta Gilpin, in the event of her having no children, the fee simple of the property.
In the argument of the case, counsel have expended a large amount of learning and industry in the discussion of the question, whether the trusts created by this will are executory or executed.
An executory trust is thus defined in 2 Jarman on Wills, 253*: “A trust is said to be executory or directory where the objects take, not immediately under it, but by means of some further act to be *377 •done by a third person, usually him in whom the legal estate is vested. As where a testator devises real estate to trustees in trust to convey it to certain uses. In these cases the direction to'convey •or settle is considered merely in the nature of instructions or heads of a settlement, which are to be executed, not by a literal adherence to the terms of the will, which would render the direction to settle nugatory, but by formal limitations adapted to give ^effect to the purposes which the author of the trust appears to have had in view.”
And the rule seems to be the same in the United States. Adams’ Eq. 40*, n. 2.
Lord Eldon, in Jervoise v. The Duke of Northumberland, 1 Jac. & W. 539, states the law to be, that in those cases of executory trusts, where the meaning of the party who declares the trust is imperfectly expressed, courts of equity take upon themselves so to modify the words as to carry into effect that which, upon the whole, appears to be the meaning of the party, although imperfectly expressed.
“ The trust created by this will,” said Sir L. Shadwell, V. Ch., in Stonor v. Curwen, 5 Sim. 264, “ is clearly an executory trust, and an executory trust as to which nobody can say that the words which the party who has created the trust has used are so clear as -at once to show what sort of conveyance he meant. And although I apprehend the law to be, that whether the trust be executed or executory, the same construction must be put on the words, yet that means only in those cases where the words which declare the executory trust are so clear in themselves as to point out what the 'trust is to be.”
An excellent illustration of a case of executory trust, in which, a court of inquiry will depart from the particular language of a testator in order to effectuate his clearly expressed and controlling intention, is afforded by the case of the City of Zanesville v. McIntire’s Adm’rs et al., decided at the present term.†
“ Where directions are given for the execution of some future conveyance or settlement of trust property, but the particular limitations are not fully or accurately specified, this is an executory trust; and in carrying such a trust into execution, regard must be •had to the general intention rather than to the technical import of *378 any particular expressions used.” Hill on Trustees, 328*. But the same author adds: “However, in executory trusts created by will, all parties claim equally as volunteers under the bounty of the testator. In these cases, therefore, the words of 'the will receive their *full legal effect, unless it appear from the will itself, that the testator's real meaning would he frustrated by a strict execution of his directions.” lb. 329*.
Now, in the view which we take, and with the understanding which we have, of the language of the testator in the will which we are called upon to construe, and guided by the general principles above laid down — the correctness of which is, on all hands, conceded — we do not find ourselves obliged to discuss or to determine the question so laboriously argued by counsel, whether the-trusts created by this will are, or are not, executory; for, be that as it may, these are “trusts created by will; all parties claim equally as volunteers under the bounty of the testator;” the “ words of the will,” therefore, “receive their full legal effect;” and, in our opinion, it does not “ appear from the will itself, that the testator’s real meaning would be frustrated by a strict execution of his directions.” Those directions have been strictly executed as respects the plaintiff Euretta, in the conveyance made to her by the surviving trustee ; and we are unable to find in the words of the will, with such aid as the light reflected from surrounding circumstances affords, any satisfactory indications of an intention to vest a reversionary estate in fee simple in his daughters in any event, or on any contingency whatever, but rather significant indications to the contrary. And if we are right in our conclusions in this respect, it follows that the plaintiffs can not be aided in any way by this court. We can not make for the testator a will which, for whatever cause, he himself did not make. And we arrive at these conclusions from the following considerations :
1. The language of this will is the language, not of ignorance, but of intelligence — of legal intelligence. So far as the testator has gone, in the expression of his purpose and desire in respect to the disposition of his estate, his words are apt, direct, and clear; and in the absence of countervailing considerations, this gives rise to the reasonable presumption that he meant what he said, and no more.
2. It is certain that the testator, in the final disposition of his real estate, after the lapse of the first fifteen years limited by him, *379 did make, and did intend to make, a difference between *his sons and his daughters. He gives, in unequivocal words, to each of his sons an equal share absolutely in fee; and in words equally unequivocal, he gives to each of his daughters a life estate only in a like share, with remainder over to their children, if any.
Grant that this was making an unreasonable difference. He had a right to give to whom he pleased, and with such limitations and on such terms as he pleased, provided the gift did not contravene good morals or public policy. But I am unable to see anything that can properly be characterized as unreasonable, and much less anything unnatural, in the limitations he has imposed on his gifts to his daughters. It is certainly possible that his failure to provide in express terms for the contingency of his daughters having no issue, may have been the result of oversight, and, if this be so, it can make no difference in the case; for we do not know, and are not at liberty to act on mere conjecture, as to what he would have done with the contingent reversion, in case the possible contingency on which the reversion depends had occurred to his mind. But I think it is quite as probable — and even more so, considering the degree of intelligence in the testator or his scrivener which the will manifests — that the omission to expressly provide for the contingency mentioned, was the result of design. "What motives influenced the formation of such design wc may only conjecture, with a view to show that they may have been neither unreasonable nor unnatural. It may have been that he was distrustful in respect to the possible character of his sons-in-law, or that he feared that the weakness of his daughters might subject them to influences which would lead to such a disposition of their patrimony as he could not anticipate with approval; or more likely still, as I think, he may have known, as matter of law, that if his daughters had no issue, their shares, after the termination of their life estates therein, would revert to his own heirs general, and thence his bounty would descend along with the current of his own blood; and so he would have no occasion to make express provision for the contingency named, and one of the'most natural and most .commonly operative of human motives would be gratified.
*We thus arrive at the conclusion, that, as to the possible contingent reversion, on the death of the plaintiff Euretta without having had issue, the plaintiff died intestate; and it is urged against this conclusion, that “ it is a settled rule of construction, *380 •that a testator is never presumed to intend to die intestate, as to any part of his estate to which his attention seems to have been directed, and a court of equity will put such a construction upon equivocal words as to prevent such a result.” Collier v. Collier, 3 Ohio St. 373. But this rule can have no application where there are no equivocal words to be construed; and this, it seems to us, is such a case.
Again, it is urged in behalf of the plaintiffs, that the testator, in the first place, devises an entire fee-simple estate to his trustees in trust; and yet, if the trustees make no other or further conveyance to the plaintiff Euretta than they have made, and in case she shall die without having issue, then there will still remain in the trustees a reversionary interest undisposed of by the will; and hence, it is argued that the testator intended to dispose by will of his entire estate in every possible contingency. But to this it is, we think, well answered, that it is a general rule of law, that “where real estate is devised to trustees, though with words of inheritance, prima facie, the trustees take only so much of the legal estate as the purposes of the trust require ” (Hawkins on the Construction of Wills, 143, 144, and cases there cited) ; and that, at the time this will took effect, there was no statutory provision affecting the operation of this rule.
The petition will be dismissed.
Day, C. J., and White, Welch, and Scott, JJ., concurred.

 Ante, 352.